UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ABRAM,

                Plaintiff,                Civil Action No. 14-11431
                                                      Honorable Judith E. Levy
        v.                                     Magistrate Judge David R. Grand

CORIZON HEALTH, INC.,
*et al.*,

                Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [23]

Before the Court is the Motion for Summary Judgment filed on June 16, 2014, by two of the defendants in this action, Troy Pendell and Penny Parsons. [23]. Abram submitted a response to this motion on October 8, 2014. [37]. An Order of Reference was entered on June 18, 2014, referring all pretrial matters to the undersigned pursuant to U.S.C. §636(b). [26]. The Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment [23] be **GRANTED**.

### II.    REPORT

#### A.    Abram's Allegations

Abram is a former Michigan Department of Corrections ("MDOC") prisoner and current parolee, though at all times relevant to the complaint he was confined in either the Central Michigan Correctional Facility (the "CMCF") in St. Louis, Michigan, or the Pugsley

1

Correctional Facility (the "PCF") in Kingsley, Michigan. [1 at 3; 23-2 at 2]. Abram brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Corizon Health, Inc., Registered Nurse Penny Parsons ("Nurse Parsons"), Registered Nurse Commins, unknown nurse Jane Doe, Dr. Joseph Burtch, and Dr. Harriet Squier violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with timely health care, and that Assistant Resident Unit Supervisor Troy Pendell ("ARUS Pendell") violated his First Amendment right to free speech by retaliating against him for filing grievances related to that matter. [1]. The facts discussed below focus on Abram's claims against Nurse Parsons and ARUS Pendell, as they are the only movants with respect to the instant motion.

In his complaint, Abram asserts that at approximately 11:00 p.m. on February 21, 2013, while he was housed at CMCF, he reported experiencing "extreme pain in [his] rectum" to Third Shift Officer Schott, who put Abram in touch with the health clinic. [1 at 3]. Abram alleges that he then spoke by phone to Nurse Parsons, an on-call nurse (who was at the St. Louis Correctional Facility (the "SLCF")), who asked him to identify his "symptoms." [*Id.*].[1] Abram claims to have informed her that he was experiencing "extreme pain in [his] rectum" (though, as discussed below, Nurse Parsons denies that he so advised her). [*Id.*]. Abram claims that Nurse Parsons advised him that the prison's "health care" center was closed at that time of night, and instructed him to "send a health clinic kite."[2] [1 at 3].

Abram acted quickly on Nurse Parson's suggestion. He alleges that the next morning, he reported this same pain to First Shift Officer Chaney, who put him in touch with an unnamed

---

[1] Records show that this call took place at 10:48 p.m. [24 at 6].

[2] This phone conversation appears to be Nurse Parson's only involvement with Abram.

2

"Jane Doe" nurse on call.[3] [*Id.*]. Abram states that he was again asked to identify his "symptoms," told the nurse that he was experiencing "extreme pain" in his rectum, and was instructed to send a kite to the health center. [*Id.*]. Abram asserts that around 2:45 p.m. that same day, he started having chills, and told Second Shift Officer Sowels that he was in extreme pain and that his body was shaking. [*Id.*]. He was then sent to health care in a wheelchair. [*Id.*]. Abram alleges that he was found to have a very high temperature, and was "rushed to the hospital" for "emergency" surgery, though the surgery did not take place until two days later, on February 24, 2013. [*Id.*].[4]

Abram also alleges that he filed grievances against certain prison officials relating to the medical care he received, and was retaliated against as a result. [*Id.*]. Specifically, Abram asserts that ARUS Pendell transferred him to the PCF on April 2, 2013, despite a "hold" resulting from his participation in the "Sexual Offender Program." [*Id.*]. He was returned to the CMCF one week later. [*Id.*].

    **B.**    **Parsons and Pendell's Motion for Summary Judgment**

On June 16, 2014, Nurse Parsons and ARUS Pendell filed the instant motion for summary judgment. [23]. Nurse Parsons argues that Abram's Eighth Amendment claim fails because he did not inform her that he was experiencing rectal pain, he did not demonstrate that

---

[3] Abram appears to have made this report very early the next morning (only a few hours after his call with Nurse Parsons). Records show that he spoke with Nurse Tiffany Cannefax about his pain no later than 6:39 a.m. [23 at Ex. 1]. Nevertheless, Abram contends that Nurse Parsons is responsible for "refusing medical treatment to [his] serious medical needs for approximately 16 hours." [1 at 4].

[4] Abram challenges the post-surgery care he received from other defendants, but his allegations as to those matters are not germane to his claims against Nurse Parsons or ARUS Pendell.

3

the delay in care allegedly attributable to Parsons caused serious injury[5], medical care was not available at the time of Abram's call, and because, at worst, she acted in a negligent fashion, thereby falling short of deliberate indifference. [23 at 9-11]. ARUS Pendell argues that Abram's First Amendment claim fails because a transfer from one prison to another is generally not considered an adverse action, because ARUS Pendell did not initiate the transfer, and because Abram presented no evidence that Pendell's action was motivated by retaliation. [23 at 12-14]. Finally, Nurse Parsons and ARUS Pendell argue that they are entitled to qualified immunity because Abram did not suffer the violation of a clearly established right. [23 at 16-17].

## C.      Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the

---

[5] Nurse Parsons characterizes this aspect of Abram's claim as "alleg[ing] a delay in medical care, rather than a complete denial of medical care." [23 at 15]. Construing Abram's complaint liberally, however, he seems, at least in part, to be alleging that he suffered unnecessary pain during the window of time between his call with Nurse Parsons and when he was sent to the hospital. In other words, he is claiming that a denial of medical care during that window of time violated his Eighth Amendment rights.

4

absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **D.**    **Analysis**

As set forth above, Abram claims that Nurse Parsons violated his Eighth Amendment right to be free from cruel and unusual punishment when she failed to provide medical treatment to him. Abram also claims that ARUS Pendell violated his First Amendment rights when Pendell purportedly transferred him to the PCF in retaliation for his filing of grievances. [1 at 2-4]. The Court addresses these claims in turn.

    *1.*    *Abram's Eighth Amendment Deliberate Indifference Claim against Nurse Parsons*

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments" upon incarcerated persons. *United States v. Campbell*, 245 F. App'x 505, 508 (6th Cir. 2007). This prohibition prevents prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. §1983." *Id.* (citing *Roberts v. City of Troy*, 773 F.2d 720,

5

723 (6th Cir. 1985)). Deliberate indifference can arise as a result of delayed treatment, *Blackmore*, 390 F.3d at 899, inadequate treatment, *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment whatsoever, *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448-449 (6th Cir. 2014) for a prisoner's serious medical need.

> a. *Components of an Eighth Amendment Deliberate Indifference Claim*

The Sixth Circuit recently explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need.[6] To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted). Moreover, a plaintiff must demonstrate that a prison official defendant knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, the official must recognize the potential for harm to the inmate,

---

[6] A sufficiently serious need must be more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992)). Rather, it must pose "a substantial risk of serious harm." *Farmer*, 511 U.S. 825, 824 (1994); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

6

and must fail to act to prevent that harm.

> b. *Abram Fails to Raise a Material Question of Fact as to whether Nurse Parsons Acted with Deliberate Indifference to His Serious Medical Needs*

In addressing Nurse Parson's motion for summary judgment, the Court assumes that an inmate experiencing "extreme pain" in his rectum has a serious medical need. The salient question here, however, is whether, in response to the evidence presented by Nurse Parson that Abram (1) did not tell her he was experiencing such pain, and (2) did not otherwise exhibit a condition requiring immediate medical attention, Abram has made the "affirmative showing with proper evidence [required] to defeat the motion." *Alexander*, 576 F.3d at 558. The Court finds he has not satisfied that burden.

Nurse Parsons makes clear in her affidavit that, at the 11:00 p.m. hour when she and Abram spoke, the two of them were at different facilities – she at SLCF, and he at CMCF (West unit). [23-2 ("Parsons Aff.") at ¶3]. Nurse Parsons and Abram were never face-to-face. Abram's factual allegations about his conversation with Nurse Parsons, in their entirety, are as follows:

> On February 21, 2013 around 11:00 p.m. I told 3rd Shift Officer that I'm having extreme pain in my rectum. Officer Schott called Health Care and put me on the phone with [Nurse Parsons]. She asked me what's my symptoms. I told her that I'm having extreme pain in my rectum. [Nurse Parsons] stated that the Health Care [office] is close [sic] and to send a health care kite.

[1 at 3].

In her motion, Nurse Parsons disputes Abram's allegations, and asserts that "[Abram] never told [her] he was having rectal pain, nor mentioned anything else that would indicate that his medical issue needed to be evaluated immediately." [23 at Ex. 1 at 2-4]. Nurse Parsons' contention is supported by her affidavit in which she avers:

7

> [Abram alleged in his complaint that] "she asked me what's my symptoms". I do not use that terminology…Generally the words I use are "I'm the on call nurse what's the problem tonight?"

[Parsons Aff. at ¶5].

Importantly, the support for Nurse Parsons' position does not end there; she also provided a copy of her contemporaneous "kite response" which, she asserts, "details [her and Abram's] conversation that night. This was documented right after our contact. I generally document almost word-for-word the conversation, but always the prisoner's complaint." [*Id.*]. Nurse Parsons' kite response provides:

> Spoke with [Abram] who is concerned about the medication he was put on back in January for his prostate. He states he thinks it is hurting, not helping the situation. Encouraged [Abram] to relax tonight, fill out a kite to be evaluated regarding this issue. [Abram] verbalized understanding. Informed officer of the same.

[24 at 6].

Additional relevant information can be gleaned from the documents presented by Nurse Parsons. First, Abram and Nurse Parsons communicated only by telephone. Thus, she was unable to visually assess Abram's needs. Second, Abram was able to communicate his desire to speak with a health care professional to his unit officer, and then was able to engage in the telephonic conversation with Nurse Parsons. He does not allege that he was in such pain that this conversation was in any way difficult for him. Indeed, Nurse Parsons' kite response indicates that Abram "verbalized [his] understanding" of her suggestion that he submit a health care request in the morning. Third, Abram was able to follow up on Nurse Parson's suggestion by contacting Nurse Cannefax only a few hours later on the morning of February 22, 2013.[7] [23 at

---

[7] In light of this fact, it is unclear why Abram seeks to hold Nurse Parsons responsible for "refusing medical treatment to [his] serious medical needs for approximately 16 hours." [1 at 4]. *See supra*, fn. 3.

Ex. 1]. And, it was not until later that day, around 2:45 p.m., that Abram alleges he "**started** having chills." [1 at 3 (emphasis added)]. Finally, although Abram alleges that he was then "rushed" to the hospital and underwent "emergency surgery," he admits that he did not actually have surgery until February 24, 2014, two days later. [*Id.*].

Abram offers no meaningful response to Nurse Parson's testimony and corroborative documentary evidence that he did not give her any reason to believe he was suffering from extreme rectal pain that required immediate attention, and that she did not actually draw that inference.[8] *See Farmer*, 511 U.S. at 837. Though the burden shifted to him "to set forth specific facts showing a triable issue" as to those matters, *Wrench LLC,* 256 F.3d at 453, instead, in his response to her summary judgment motion, Abram simply reiterates his unsupported assertion that he told Nurse Parsons that he was having "extreme pain" in his rectum and that she "did nothing about it." [37 at 2]. This response amounts to merely "rely[ing] on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact,'" *Alexander*, 576 F.3d at 558, which is insufficient. Nurse Parsons is therefore entitled to summary judgment on Abram's Eighth Amendment deliberate indifference claim.

---

[8] Nurse Parsons alleges that on her phone call with Abram, he advised her that:

> he had been seen back in January for prostate issues and the doctor put him on medication for it. He stated, "I think this medication is making it worse instead of better." I informed Abram that 'your health care department is closed at this time of night. We cannot change your medicine or have a doctor evaluate this at this time; you can fill out a kite and talk to your HealthCare in the morning…I informed the officer of my instructions to [Abram]...[Abram] never told me he was having rectal pain, nor mentioned anything else that would indicate that his medical issue needed to be evaluated immediately. Based on the information I had, it appeared that [] Abram's medical issue could wait until the morning, when the health care department at his facility was open. [Parsons Aff. at ¶6].

*2. Abram's First Amendment Retaliation Claim against ARUS Pendell*

In his complaint, Abram alleges that on April 2, 2013, in retaliation for submitting a grievance regarding his allegedly delayed medical care, ARUS Pendell transferred him to the Pugsley Correctional Facility. [1 at 2, 4]. Abram appears to allege that he should not have been transferred because he was participating in a Sexual Offender Program at CMCF. [1 at 2-4]. He alleges that he was transferred back to CMCF on April 9, 2013. In his response to ARUS Pendell's motion, Abram further argues that the transfer which "took[] [him] out of [the] Sex Offenders Program [] *could have* cause[d] [him] to receive a flop from the parole board," which the Court interprets to mean that he *could have* been denied parole because he was unable to complete the Sexual Offender Program. [37 at 4 (emphasis added)].

To raise a valid retaliation claim under the First Amendment, a plaintiff must demonstrate that (1) he was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from pursuing that conduct and; (3) that the defendant's adverse action was motivated (at least in part) by the plaintiff's protected conduct. *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011).

"Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness is a question of fact." *Kennedy v. Bonnevelle*, 413 F. App'x 836, 839-840 (6th Cir. 2011). Consequently, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Id.* quoting *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002). However, truly *de minimis* or inconsequential violations may be dismissed as a matter of law. *Id.* This analysis must be tailored to the context of the specific retaliation claim. *See Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005). "Prisoners may be required to tolerate more than public employees, who may be

10

required to tolerate more than average citizens, before an action taken against them is considered adverse." *Id*. (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)). Moreover, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d 399.

### a. *Protected Activity Component*

The First Amendment protects a prisoner's filing of non-frivolous grievances. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Nothing in the record indicates that Abram's grievance was filed frivolously, and Defendants do not dispute this point. Thus, the Court assumes for purposes of the instant motion that this conduct was protected by the First Amendment. [1 at 4].

### b. *Deterrence Component*

While a prisoner does not have a right to avoid prison transfers, prison officials may not "place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights." *Hill*, 630 at 473. Transfers which "result in more restrictions and fewer privileges for prisoners are considered adverse." *Id*. at 474. However, prisoners are routinely transferred from one prison to another, and barring certain "aggravating factors," merely transferring a prisoner from one prison to another of the same security level is not considered to be an adverse action. *See Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006). The term "aggravating factors" has been construed by courts in this circuit to refer to limitations on a prisoner's access to the courts. *See Id*. at 358; *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005); *see also Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (reading *Hix* to state that a prison transfer which does not limit a prisoner's access to the courts does not constitute an adverse action).

11

Abram has not argued that his prison transfer has limited his access to the courts, nor that the transfer resulted in his confinement in a prison with a greater security level. In fact, he has not alleged that the transfer, which, by his own admission, lasted no more than one week, caused him to suffer any actual harm. Instead, he merely argues that he should not have been transferred to the PCF because of his enrollment in a "Sexual Offender Program" at CMCF, and that "by having a [sic] operation [he] should not have been transfered [sic]." [37 at 4].

Abram does not cite any authority for the proposition that a prisoner's removal from a Sexual Offender Program can constitute an adverse action, nor is the Court aware of any such authority. On the contrary, prisoners have no constitutionally protected liberty interest in participating in a particular prison program. *Tate v. Howes*, 2009 WL 1346621, *5 (W.D.Mich.2009) (citing *Moody v. Daggett*, 429 U.S. 78, 88 (1976) (holding that a prisoner does not have a due process interest in their participation in rehabilitative programs)). Moreover, it has been consistently held that prisoners do not have a constitutional right to parole. *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011). Since Abram had no constitutional right to participate in the Sexual Offender Program or to parole, his speculation that the one-week transfer "could have" caused him to be denied parole because he was not, during that brief period, enrolled in the Sexual Offender Program, is immaterial. [37 at 4].

Similarly, Abram points to no authority supporting his claim that a prison transfer in the wake of a surgery constitutes an adverse action. While Abram does allege that he was still suffering from the aftereffects of surgery at the time of his April 2, 2013 prison transfer, he does not argue that this transfer would deter a person of ordinary firmness from pursuing protected First Amendment conduct, nor that he had a medical hold on his file but was nevertheless transferred in violation of MDOC policy. [1 at 2].

Accordingly, the Court finds that Abram has not raised a material question of fact as to whether ARUS Pendell's alleged actions would deter a person of ordinary firmness from pursuing that conduct.

### c. Causal Connection Component

Abram has also failed to raise a triable question of fact as to whether there is a causal connection between his protected conduct and the allegedly adverse action taken by ARUS Pendell. Such allegations must be supported by material facts, though circumstantial evidence will sometimes suffice because of the difficulty of providing direct evidence of an official's motives. *See Kennedy*, 635 F.3d at 218. Temporal proximity of the allegedly adverse action to the protected conduct can provide evidence of a retaliatory motive. *See King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). However, standing alone, "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Abram does not detail the date on which he submitted his grievance(s) related to his allegedly delayed medical treatment. Defendants, however, have provided a copy of the April 18, 2013, grievance Abram filed challenging his prison transfer [23 at Ex. 2], but have similarly failed to identify the date on which Abram filed his grievance(s) regarding the allegedly delayed medical treatment. Consequently, the temporal proximity between Abram's grievance(s) relating to that treatment and his prison transfer cannot be established. Yet, even assuming a close proximity between those events, Abram has not provided sufficient evidence to support his allegations of retaliatory motive. "Conclusory allegations of a retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir.2005) (internal quotation omitted).

ARUS Pendell states in a sworn affidavit that his role at CMCF involves the completing of transfer screening at the direction of a transfer coordinator, and that the screening process determines the security level at which a prisoner may be confined. [23-3 at ¶4]. He further attests that an ARUS officer does not have the authority to initiate a transfer order, and that such an order can only be approved by the Warden or his designee. [*Id*.]. He attests that, in Abram's case, he "was directed by the transfer coordinator to submit a transfer screen for Abrams [sic] on 4-1/13." [*Id.*]. Finally, ARUS Pendell provides Abram's Transfer Order which was approved by other officers. [*Id.* at 8].

A causal connection between a prison officer's alleged act of retaliation and his protected conduct generally cannot be established when the accused prison officer was not the decision-maker with regard to the alleged act of retaliation. *See McCaskill v. Dettloff*, 2014 WL 7403857, at *4 (E.D. Mich. Dec. 30, 2014) ("There is no causation where the defendant is not the decision-maker.") (collecting cases). Abram has failed to rebut the evidence submitted by ARUS Pendell that he was not the "decision-maker" with respect to initiating or approving the transfer. *Wrench,* 256 F.3d at 453. In fact, Abram does not even seem to dispute this. The Step I Grievance Response ARUS Pendell attached to his affidavit indicates that Abram recognized that he was not grieving ARUS Pendell, but the other individuals who initiated his transfer. [24-3 at 6]. Similarly, in his response to ARUS Pendell's motion, Abram seems to recognize that ARUS Pendell was not the decision-maker himself, but rather merely "knew that adverse action was taken that was motivated, at least in part, by his protected conduct." [37 at 2].[9]

---

[9] It is true that elsewhere in his response, Abram states that "Defendant Pendell violated [his] constitutional rights [by] retaliating against [him] and could have or did have [him] transferred…" [37 at 4]. However, this type of speculative and conclusory assertion fails to satisfy Abram's burden in response to the evidence submitted by ARUS Pendell that others initiated and approved the transfer. *Wrench,* 256 F.3d at 453.

The Court notes that one exception to the general rule limiting liability to the decision-maker provides that if an inferior prison officer is the driving force behind a transfer, and the superior prison officer merely "rubber stamps" that decision without independently evaluating the situation, the inferior officer acts as the *de facto* decision-maker, and can be liable for the retaliatory act. *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir.2008); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *see also Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (holding that, in a case where a prison officer completed a transfer screening several weeks prior to the creation of a transfer order, the prisoner's transfer could be imputed to the screening officer, because that act rendered the prisoner eligible for transfer and thereby "set in motion" the transfer process). Yet, as discussed above, Abram provides no evidence to counter ARUS Pendell's evidence that he lacks the authority to initiate a transfer, and that he neither initiated Abram's transfer nor acted independently in performing the transfer screening. Thus, he fails to contradict ARUS Pendell's assertion that the screening was completed upon an order from a superior officer. Finally, Abram has not controverted ARUS Pendell's claim that he lacks the authority to initiate a transfer.

For all of these reasons, Abram has failed to raise a material question of fact that ARUS Pendell's completion of a transfer screening violated his First Amendment rights. Summary judgment is therefore also proper as to Abram's First Amendment claim against ARUS Pendell. *Wrench,* 256 F.3d at 453.

### 3. *Qualified Immunity*

Defendants also assert that they are entitled to summary judgment based on qualified immunity. [23 at 14-17]. Because the Court has found that the Defendants' motion for summary judgment should be granted with respect to Abram's claims against both Nurse Parsons and

ARUS Pendell, it declines to address the issue of qualified immunity.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **[23]** be **GRANTED**.

Dated: February 9, 2015
s/ David R. Grand
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 9, 2015.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager