UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ABRAM,

                Plaintiff                Civil Action No. 14-11431
                                              Honorable Judith E. Levy
      v.                                Magistrate Judge David R. Grand

CORIZON HEALTH, INC.,
*et al.*,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT THE CORIZON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [45]

Before the Court is the Motion for Summary Judgment filed on March 14, 2015 by three of the defendants in this action, Corizon Health Inc., Dr. Harriet Squier, and Dr. Joseph Burtch (collectively the "Corizon Defendants"). [45]. Plaintiff Michael Abram ("Abram"), who formerly was a prisoner at the Mich. Dept. of Corr. ("MDOC") but currently is on parole, was ordered to respond to this motion on or before April 7, 2015. [48]. As of April 17, 2015, Abram had not responded to the Corizon Defendants' motion, and the Court ordered him to show cause, in writing, on or before May 1, 2015, why it should not recommend that the motion be granted. [50]. To date, Abram has responded to neither the Court's Order to Show Cause, nor the Corizon Defendants' Motion for Summary Judgment.[1]

---

[1] The Corizon Defendants' motion is thus unopposed. *See* E.D. Mich. L.R. 7.1(c) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available."), 7.1(e)(1) ("A response to a dispositive motion must be filed within 21 days after service of the motion"). For this reason alone, summary judgment should be granted to the Corizon Defendants. *See Arndt v. Booker*, 2014 WL 7011980, at *2 (E.D. Mich. Dec. 11, 2014) ("'[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'") (quoting *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)); *Lumpkin v. Deutsche Bank Nat. Trust Co.*, 2012 WL 3870353, at

1

An Order of Reference was entered on June 18, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). [26]. Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, despite the fact that Abram has been paroled, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Corizon Defendants' motion for summary judgment [45] be **GRANTED**.

## II.   REPORT

### A.   Abram's Allegations

Abram is a former Michigan Department of Corrections ("MDOC") prisoner and current parolee, though at all times relevant to the complaint he was confined in either the Central Michigan Correctional Facility ("STF") in St. Louis, Michigan, or the Pugsley Correctional Facility ("MPF") in Kingsley, Michigan. [1 at 3; 23–2 at 2]. Abram brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging, in relevant part, that the Corizon Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with timely health care. [1].

In his complaint, Abram asserts that at approximately 2:45 p.m. on February 22, 2013, he started having chills, and told Second Shift Officer Sowels that he was in extreme rectal pain and that his body was shaking. [1 at 3]. He was then sent to health care in a wheelchair. [*Id*.]. Abram alleges that he was found to have a very high temperature, and was "rushed to the

---

*2 (E.D. Mich. June 28, 2012) ("'[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.'") (quoting *Humphrey v. United States Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008)).

hospital" for "emergency" surgery to drain a perianal abscess, though the surgery did not take place until two days later, on February 24, 2013. [*Id.*]. Abram further alleges that, on March 2, 2013, when he continued to complain of pain, a request was made to Dr. Squier for a follow-up with Abram's surgeon and she "denied the follow-up procedure/ test request follow[ing] surgery visit."[2] [*Id.*]. Abram asserts that, after being temporarily transferred to MPF, from the moment he was brought back to STF on April 9, 2013, he had "been complaining" to Dr. Burtch about his continued pain and bleeding. [*Id.* at 4]. He next claims that this pain and bleeding continued until he had additional surgery on June 3, 2013. [*Id.*]. His complaint about Dr. Burtch's role in his treatment is that Dr. Burtch "fail[ed] to resubmit [a] specialty request for follow-up treatment" during the time period between his first surgery and his second one, which he asserts constituted cruel and unusual punishment. [*Id.* at 5]. Finally, Abram alleges that Corizon had a "custom or policy" that violated his Eighth Amendment rights because they had "the final say as to who get[s] approve[d] for off-site specialty care." [*Id.* at 4].

### B.  The Corizon Defendants' Motion for Summary Judgment

On March 14, 2015, the Corizon Defendants filed the instant motion for summary judgment. [45]. Dr. Squier argues that Abram's Eighth Amendment claim against her fails because, at the time she denied the request for a follow-up visit with Abram's surgeon, there was no medical evidence suggesting that Abram would benefit from such a follow-up. Dr. Squier further asserts that her decision was "based on her medical judgment," rather than deliberate indifference[3], and there is no evidence in the record that she should have been aware that the

---

[2] Abram's complaint says this occurred on March 1, but his medical records and Dr. Squier's affidavit indicate the decision was made on March 2. [47 at 54; 51 at 6].

[3] As discussed below, to prevail on an Eighth Amendment claim, an inmate must show, among other things, that the defendant acted with "deliberate indifference" to a serious medical need.

3

follow-up visit was necessary. [*Id.* at 21-22]. Dr. Burtch argues that Abram's Eighth Amendment claim against him fails because he "actively [sought] a solution to [Abram's] complaints of pain," and there is no evidence that he was deliberately indifferent to Abram's serious medical needs. [*Id.* at 22-23]. Both doctors also assert that Abram's mere disagreement with the treatment he received is not enough to establish deliberate indifference. [*Id.* at 22, 23]. Finally, Corizon argues that Abram's Eighth Amendment claim against it fails because Abram did not "identify a policy, practice, or procedure of Corizon" that caused his particular injury. [*Id.* at 23].

### C. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.,* 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a

triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander,* 576 F.3d at 558 (internal quotations omitted).

**D. Analysis**

*1. Components of an Eighth Amendment Deliberate Indifference Claim*

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments" upon incarcerated persons. *United States v. Campbell,* 245 F. App'x 505, 508 (6th Cir. 2007). This prohibition prevents prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "Deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id.* (citing *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985)). Deliberate indifference can arise as a result of delayed treatment, *Blackmore,* 390 F.3d at 899, inadequate treatment, *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment whatsoever, *Rouster v. Cnty. of Saginaw,* 749 F.3d 437, 448–449 (6th Cir. 2014), for a prisoner's serious medical need.

The Sixth Circuit recently explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component

> requires the existence of a sufficiently serious medical need.[4] To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Medical Servs., Inc.,* 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted) (footnote added). Moreover, a plaintiff must demonstrate that a prison official defendant knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In other words, the official must recognize the potential for harm to the inmate, and must fail to act to prevent that harm.

As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead,

---

[4] A sufficiently serious need must be more than "mere discomfort or inconvenience." *Talal v. White,* 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir. 1992)). Rather, it must pose "a substantial risk of serious harm." *Farmer,* 511 U.S. 825, 824 (1994); *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

> 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id*. (internal citations omitted). Furthermore, the law in this Circuit is clear that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh,* 643 F.3d 162 at 169 (internal quotations omitted). While the former cases may evidence the type of culpability required to state a deliberate indifference claim, the latter amount to assertions of medical negligence and do not satisfy the requisite subjective component of such claims. *Id*. Indeed, courts have recognized, "[i]n cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted); *see also Umbarger*, 93 F. App'x at 736.

> 2. *Abram Fails to Raise a Genuine Issue of Material Fact as to whether Dr. Squier Acted with Deliberate Indifference to His Serious Medical Needs*

In addressing Dr. Squier's motion for summary judgment, the Court assumes that an inmate experiencing "extreme pain" in his rectum has a serious medical need. [1 at 2, 3]. The salient question here, however, is whether, in response to the evidence presented by Dr. Squier that (1) her decision to deny the request for a follow-up visit was based on her medical judgment, and (2) she was not aware of any factors that would indicate a denial of that request posed a serious risk to Abram, Abram has made the "affirmative showing with proper evidence

7

[required] to defeat the motion." *Alexander,* 576 F.3d at 558. Abram clearly has not satisfied that burden.

The only action taken by Dr. Squier that Abram alleges to be deliberate indifference to his serious medical need is her denial of "the follow-up procedure/test request follow[ing] surgery visit." [1 at 2]. However, Dr. Squier, in her motion, presents an uncontested explanation of the medical judgment that lead to that decision. On March 2, 2013, Dr. Squier, in her role as Utilization Manager for Corizon, conducted a review of Abram's condition and determined a follow-up visit to his surgeon was not necessary at that time.[5] [47 at 54; 51 at 6]. In her affidavit, Dr. Squier explains the medical rationale for this decision:

> [T]here was no indication of infection. There was no pus drainage or other signs that there was another abscess or a fistula. [Abram's] healing process appeared to be going well. I was aware that a recurrence of an abscess was possible, but there was no indication that [Abram] was suffering from such a recurrence. There was nothing to indicate that a follow-up visit with a surgeon would be beneficial.

[51 at 6-7]. Rather than approving a follow-up visit, Dr. Squier instructed STF medical staff to "follow this closely,…call the surgeon in 2 weeks with a progress report…[and] instruct [Abram] on importance of high fiber diet and consider initiating Metamucil to prevent recurrence." [47 at 54]. A few weeks later, on March 14, 2013, Abram told a STF nurse that, although his pain was still persisting, it was "getting better" despite not having the follow-up visit in question. [*Id.* at 59; 51 at 7].

Abram offers no response to Dr. Squier's testimony and the corroborative documentary evidence indicating that (1) there were no facts that gave her reason to know of an excessive risk

---

[5] Abram asserts that this follow-up visit was requested by "Surgeon MD Albert Moeller" on March 2 [1 at 2], but his medical records indicate that it was actually requested on February 28 by STF medical staff after Abram continued to complain of pain following the surgery. [47 at 53]. This is further evidence that Abram's complaints were being attended to.

to Abram stemming from a denial of the follow-up visit, and (2) she did not actually infer the presence of such risk . *See Farmer*, 511 U.S. at 837. Though the burden shifted to Abram "to set forth specific facts showing a triable issue" as to those matters, *Wrench LLC*, 256 F.3d at 453, he has not offered evidence to even suggest that Dr. Squier might have "recklessly disregard[ed]" a "substantial risk to an inmate's health" by "failing to take reasonable measures to abate it." *Broyles*, 478 F. App'x 971 at 975 (internal citations omitted). Under the circumstances, Abram's allegation that he should have been approved for a follow-up visit to his surgeon amounts to nothing more than a "disagreement between a prisoner and prison medical staff over the kinds of treatment a prisoner needs," which courts have recognized does not amount to deliberate indifference. *See Umbarger*, 93 F. App'x 734 at 736; *Cox v. Jackson,* 579 F.Supp.2d 831, 855 (E.D. Mich. 2009) (holding that the plaintiff's disagreement with a medical decision about the necessity of a requested surgery does not establish deliberate indifference). Furthermore, even if Dr. Squier's decision to deny the visit was negligent, that would be "merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock,* 273 F.3d 693 at 703; *see Cain v. Huff,* 177 F.3d 1420 at *4 (6th Cir. 1997) (holding that the defendant's decision to deny a request for surgery to treat an inmate's pain was at the most negligent and not actionable as cruel and unusual punishment).

For all of these reasons, Dr. Squier is entitled to summary judgment on Abram's Eighth Amendment deliberate indifference claim.

> 3. *Abram Fails to Raise a Genuine Issue of Material Fact as to whether Dr. Burtch Acted with Deliberate Indifference to His Serious Medical Needs*

As with Dr. Squier's Motion, the Court assumes for the purposes of this motion that Abram's continued pain and bleeding after his initial surgery on February 24, 2013 constituted a serious medical need. [1 at 4]. Again, the salient question is whether, in response to the

evidence presented by Dr. Burtch that he (1) actively sought a solution to Abram's pain, and (2) provided thorough medical care, Abram has made an "affirmative showing with proper evidence [required] to defeat the motion." *Alexander,* 576 F.3d at 558. Abram has not done so.

The only action taken by Dr. Burtch that Abram alleges to be deliberate indifference to his serious medical need is that he failed to "resubmit [a] specialty request for follow-up treatment." [1 at 5]. This alleged violation of his Eighth Amendment rights must have occurred between March 2, 2013, when Dr. Squier denied the follow-up visit with his surgeon, and July 4, 2013, when Abram had additional surgery, because Abram's description of his interaction with Dr. Burtch in his complaint ends with that second surgery.[6] [1 at 4]. Furthermore, the Court understands Abram to be complaining about Dr. Burtch's decision not to ask Dr. Squier again to approve an off-site follow-up because Abram believes that decision caused him additional unnecessary pain during the four months between the denial and the second surgery.[7]

The first time Dr. Burtch interacted with Abram's case during this time period was when he examined Abram on March 12, 2013. [47 at 57-58]. During that examination, Abram had "no complaints" and Dr. Burtch asked him for the name of his surgeon so Dr. Burtch could "tell him [Abram] is doing well." [*Id.* at 58]. However, on March 29, 2013, after Abram reported to STF medical staff that consistent pain had returned to his rectum, Dr. Burtch called Abram's surgeon to discuss this complication. [*Id.* at 70; 45, Ex. B at 3]. After Abram continued to report

---

[6] Abram alleges this surgery occurred on June 3, 2013, but Dr. Burtch's affidavit says it was on July 4, 2013 [45, Ex. B at 3], and his medical records indicate this surgery was approved by Dr. Squier on June 28, 2013. [47 at 79-80]. Therefore, the competent evidence before the Court suggests it occurred on July 4. This actually favors Abram, as it expands the time period in which Dr. Burtch could have possibly acted with deliberate indifference to Abram's serious medical needs.

[7] Dr. Burtch's affidavit mentions treatment that occurred after the second surgery on July 4 but the Court will only deal with his treatment of Abram during the time period in question up to and including that date.

10

severe pain and Dr. Burtch saw him again, Dr. Burtch requested a colonoscopy on June 20, 2013. [47 at 72; 45, Ex. B at 3]. When that request was denied as not medically indicated [47 at 73; 45, Ex. B at 3], Dr. Burtch made another request, this time for a second surgery to drain a new abscess. [47 at 74; 45, Ex. B at 4]. That surgery occurred on July 4, 2013. [45, Ex. B at 4].

As with Dr. Squier's arguments, Abram has not responded with any evidence to dispute the combination of Dr. Burtch's affidavit and the corroborating evidence in the medical record that shows there were no facts about Abram's condition that Dr. Burtch should have been aware of between March 2, 2013 and July 4, 2013 that would have shown him that a follow-up with the surgeon was necessary. *See Farmer*, 511 U.S. at 837. Furthermore, Abram presents no facts that show that Dr. Burtch drew such an inference. *See Id.* Therefore, Abram has once again presented nothing to create a genuine issue of material fact as to the subjective prong of the Sixth Circuit test for deliberate indifference because there is no evidence of Dr. Burtch "recklessly disregard[ing]" a risk to Abram, only undisputed evidence of Dr. Burtch directing a litany of exams, communications, and requests in an effort to diagnose and treat Abram's condition. *Broyles*, 478 F. App'x 971 at 975 (internal citations omitted).

As with his claim against Dr. Squier, the fact that Abram disagrees with a medical decision made by one of his doctors is not enough to establish deliberate indifference. *See Umbarger*, 93 F. App'x 734 at 736; *Hall v. Raja*, 2010 WL 1258204 (E.D. Mich. 2010) (holding that the defendant's decision not to refer the Plaintiff for surgery was a "matter of medical judgment that does not constitute cruel and unusual punishment") (internal citation omitted). Dr. Burtch is therefore entitled to summary judgment on Abram's Eighth Amendment deliberate indifference claim.

      *4. Abram Fails to Raise a Genuine Issue of Material Fact as to whether Corizon Acted with Deliberate Indifference to His Serious Medical Needs*

  A private entity employed by the state to provide medical services to prison inmates (such as Corizon) may be sued under §1983 for constitutional violations. *See West v. Atkins*, 487 U.S. 42, 54 (1988). However, such an entity may not be held vicariously liable for the constitutional violations of its agents on the basis of *respondeat superior*. *See Jones v. Prison Health Servs.*, 2011 WL 7630364, at *2 (E.D. Mich. Dec. 14, 2011) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978)). Rather, in order to establish Corizon's liability for a constitutional violation under §1983, Abram must show that Corizon took a "deliberate action" that "caused a deprivation of federal rights." *Jones*, 2011 WL 7630364, at *2. Indeed, pursuant to *Monell*, Abram must establish that Corizon had a policy, custom, or practice that resulted in the deprivation of his constitutional rights. *Id.*

  Here, Abram has not pointed to any specific policy, practice, or procedure of Corizon that purportedly deprived him of a constitutional right. In his complaint, he only alleges that a Corizon "custom or policy violated [his] constitutional rights because they have the final say as to who get[s] approve[d] for off-site specialty care." [1 at 4]. This broad, conclusory allegation does not "set forth specific facts showing a triable issue." *Wrench,* 256 F.3d at 453. The fact that Corizon had the final say on approval for off-site care is not an allegation of wrongdoing but rather merely a description of a neutral procedure.[8] Corizon is therefore entitled to summary judgment on Abram's Eight Amendment deliberate indifference claim.

---

[8] In order to allege a policy, practice, or procedure that deprived him of a constitutional right, Abram would have needed to claim that Corizon had a specific policy or practice of deliberately or unnecessarily denying requests from certain prisoners, such as those who seem to have a lot of medical complaints, or prisoners in general.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [45] be **GRANTED**.

Dated: June 23, 2015　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2015.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager